## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STEPHANIE KUNKEL     :
  Plaintiff,       :
             :   **No. 23:20-cv-01906 (VLB)**
 v.          :
             :
STRAWBERRY PARK RESORT  :   **November 2, 2022**
CAMPGROUND, INC.     :
  Defendant.      :
             :
             :
             :

## DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 27]

Plaintiff Stephanie Kunkel brings this employment discrimination case against her former employer, Strawberry Park Resort Campground, Incorporated ("Strawberry Park"). She alleges Strawberry Park discriminated against her on the basis of her gender and disability—in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, ("ADA"); and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, *et seq.* ("CFEPA")—when it terminated her for her "outburst" triggered by her post-traumatic stress disorder. She also claims that Strawberry Park failed to accommodate her in violation of the ADA when it required her to work in a corn maze even though she had requested to avoid large crowds when possible. Strawberry Parks moves for summary judgment on her gender discrimination, disability discrimination, and failure to accommodate claims. For the following reasons, summary judgment is GRANTED.

I.      **FACTUAL BACKGROUND**

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties.[1]   The facts are read in the light most favorable to the non-movant, Stephanie Kunkel.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendant Strawberry Park is a campground facility in Preston, Connecticut that employs more than 15 people.  [Dkt. 28-2 (L. R. 56(a)(2) Stmt.) ¶ 3.]  Its camping season runs from April through October with peak times between Memorial Day and Labor Day.  [*Id.* ¶ 7.]  Strawberry Park's upper management structure consists of Operations General Manager Carl Landi and his two direct reports, Jeremy Klemm and Michelle Pedro.  [*Id.* ¶ 18.]

Stephanie Kunkel is a 31 year old woman diagnosed with Post-traumatic Stress Disorder ("PTSD") and Major Depressive Disorder ("Depression").  [*Id.* ¶ 4.]  She first began working for Strawberry Park in 2012.  She returned as a temporary, seasonal employee each camping season through 2016.  [*See id.* ¶ 7-17.]  She did not work the summers of 2017 and 2018.  [*See id.* ¶ 16-17.]

Before the 2019 camping season, Pedro sought Kunkel's return as a temporary, seasonal employee.  [*Id.* ¶ 17.]  Pedro specifically wanted Kunkel to help with bingo (Kunkel was one of two or three licensed bingo callers at Strawberry Park), to design medals and certificates, and to schedule employees and camper activities.  [Dkt. 27-3 (Def. Mot. Summ. J. Ex. B, Kunkel Depo. Excerpt) at 37:2-38:23;

---

[1] The Court cites Plaintiff's Local Rule 56(a)(2) Statement for all facts deemed admitted. Otherwise, the Court cites directly to the Exhibits.

Dkt. 28-2 ¶ 36; Dkt. 28-5 (Pl. Opp'n Ex. B, Klemm Depo.) at 28:17-22.]  Pedro was aware that Kunkel was diagnosed with PTSD and Depression when she offered Kunkel the job.  [Dkt. 28-2 ¶ 19.]

Kunkel testified that she made several accommodation requests related to her disability, which she discussed with Pedro.  First, Kunkel stated she would need time off for medical and therapy appointments.  [Dkt. 27-3 at 41:14-43:2.] Second, Kunkel testified that she informed Pedro she had "an issue with being around big crowds of people." [*Id.*]  Kunkel "asked her if [she] could stay behind the scenes," meaning "doing desk work or doing stuff in the office," as much as possible.  [*Id.* at 41:14-43:2, 65:15-25.]  Kunkel offered to obtain a physician's note for these requests, but Pedro said that would not be necessary and agreed to them. [*Id.*]  Kunkel admitted that she was <u>never</u> promised she could avoid working with others altogether.  [*Id.* at 88:9-16.]

In April 2019, Kunkel accepted the position and began working for Strawberry Park as a seasonal employee.  [Dkt. 28-2 ¶ 21.]  In addition to Pedro, she reported directly to Cassandra Kunkel ("Cassandra"), her sister-in-law, and Kathie Bach, her mother-in-law.  [*Id.* ¶ 25.]  Her daily activities included preparing for and calling bingo, creating medals and certificates for the week, working on the schedule, and finding employees on the campground.  [Dkt. 27-3 at 43:8-14, 66:14-23.] Kunkel testified that she was required to call bingo "around huge crowds when [she] didn't want to do it."  [Dkt. 27-3 at 87:4-18.]  She testified, "I told Michelle [Pedro] that I didn't really want to do it because I had an incident in the past when calling bingo."  [*Id.* at 88:2-4.]  She acknowledged calling bingo and finding

3

employees required her to leave the office and that she never refused to do these tasks.  [*Id.* at 66:14-23.]  On the day of her termination, Kunkel was required to work in the corn maze with three to four other employees even though she expressed a desire not to do so.  [*Id.* at 87:4-88:4]

At the beginning of the 2019 camping season, Kunkel got in a verbal argument with her supervisor and sister-in-law, Cassandra.  [Dkt. 28-2 ¶ 40.] Kunkel became upset during bingo when Cassandra overrode her directive to another employee.  [*Id.*]  This argument took place in the office, away from other employees and campers.  [*Id.*]  Pedro spoke to both Kunkel and Cassandra about the incident.  [*Id.* ¶ 41.]

On another occasion, Kunkel engaged in a "shouting match" with another employee, Rich Mather, about their respective rights to use an extension cord. [Dkt. 28-5 at 27:4-11.]  Klemm testified that, while the argument was "a little nasty," there were "no physical threats or actual altercations."  [*Id.*]  Klemm spoke with Mather about the issue but did not speak with Kunkel.  [*Id.* at 39:5-16.]

On September 27, 2019, Kunkel got into an argument with Cassandra near the corn maze where she had been working.  [Dkt. 28-2 ¶ 45; Dkt 27-3 at 79:1-82:19.] Kunkel testified to the following facts.  Cassandra called Kunkel a "bitch" and Kunkel said that she was tired of "them" (presumably Cassandra and Bach) "talking shit" behind her back.  [Dkt 27-3 at 79:1-82:19.]  After arguing for some time, the two began to walk away from each other.  [*Id.*]  Another supervisor, Lacia Euell, walked towards Kunkel and put her hand in front of Kunkel—in response Kunkel slapped her hand away and said, "[Y]ou are not my boss" and "I don't have

4

to listen to you." [*Id.*]  Euell threatened to "beat" her "ass" and get her fired.  [*Id.*]  Kunkel responded that she did not need the job and was only working to help Pedro.  [*Id.*] Because both Cassandra and Euell were yelling at her, Kunkel began to smack herself in the face, saying "Go ahead, beat my ass, beat my ass, beat my ass."  [*Id.*]  Kunkel testified that Cassandra walked towards her "and she tried hitting" her, but the security guard, Roger Mainville, moved her before she could be hit.  [*Id.*]  She went back to a camper's house where she cried and took her hour break.  [*Id. at 82:20-83:7.*]

Shortly after Kunkel returned from her break, Klemm informed her that Landi had decided to terminate her.  [Dkt. 28-2 ¶ 61.]  Klemm had spoken with Euell, Cassandra, Pedro, Landi, and Mainville.  [Dkt. 28-5 at 24:5-6.]  At the time of Kunkel's termination, neither Klemm nor Landi knew Kunkel had a disability.  [Dkt. 28-2 ¶¶ 61-62.]

The parties suggest somewhat different reasons for Kunkel's termination. Kunkel testified that she was fired for "outbursts."  [*Id.* ¶ 55.]  Landi submitted an affidavit stating she was terminated for physically hitting a supervisor "during an aggressive, hostile, loud, public altercation" with Cassandra.  [Dkt. 27-2 (Def. Mot. Summ. J. Ex. A, Landi Aff.) ¶ 22.]

The evidence reflects that at least one other individual who used physical force was terminated.  [Dkt. 28-2 ¶ 57.]  In that instance, the male employee grabbed a cell phone from the hand of a guest who was filming the employee address a noise complaint.  [*Id.*]  Landi stated, "Any employee, male or female, disabled or

not, who engages in the same of similar physical aggression toward self or others at Strawberry Park would also be terminated."  [*Id.* ¶ 22.]

Strawberry Park has written rules and regulations, which Kunkel reviewed.[2] [*Id.* ¶ 24.]  Kunkel knew she could be terminated for a legitimate reason.  [*Id.* ¶ 22.]

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id*. (citing *Liberty Lobby*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at \*4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir.

---

[2] **Defendant submitted Strawberry Park's rules and regulations as Exhibit D.  The print is blurry and unintelligible.**

1996)); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).  Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb,* 84 F.3d at 518.  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

III.    ANALYSIS

Kunkel asserts claims of gender discrimination under Title VII and the CFEPA, disability discrimination under the ADA and the CFEPA, and failure to accommodate under the ADA and the CFEPA. Courts analyze employment discrimination claims brought under all three statutes with the "now-familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Kovaco v. Rockbestos-Suprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (ADA, Title VII); *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (CFEPA).

The *McDonnell Douglas* framework has three steps.  First, it requires the plaintiff to establish a *prima facie* case of discrimination, *see McDonnell Douglas*, 411 U.S. at 802, of which the elements vary for each type of claim.  The Second Circuit has noted that the burden to establish a prima facie case is "minimal" or "de minimis." *Woodman v. WWOR–TV, Inc*., 411 F.3d 69, 76 (2d Cir. 2005).

Second, if the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. At this stage, the defendant need only proffer, not prove, the existence of a nondiscriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (internal quotations omitted).

Third, if the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the legitimate, nondiscriminatory reason offered by the defendant is mere pretext for illegal employment discrimination. *See McDonnell Douglas*, 411 U.S. at 804.  "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

A. <u>Gender Discrimination</u>

Both Title VII and the CFEPA make it unlawful to terminate an employee "because of" her sex.  *See* 42 U.S.C. § 2000e-2(a)(1); Conn. Gen. Stat. § 46a-60(b)(1).

To satisfy a *prima facie* case of gender discrimination under both statutes, the plaintiff must establish that (1) she belonged to a "protected class," (2) that she was qualified for her position, (3) that she suffered an "adverse employment action," and (4) that the "adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *Clarke v. 1 Emerson Drive N. Ops., LLC*, No. 3:13–CV–690 (JCH), 2015 WL 343388, at *2 (D. Conn. May 28, 2015) (applying *Holcomb* to a CFEPA gender discrimination claim).   Strawberry Park only challenges the fourth element.

"The last element of a prima facie case may be proven by showing that a man similarly situated was treated differently." *Shumway v. UPS, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).   Kunkel argues that a male coworker, Rich Mather, displayed "outbursts" but was not terminated.  *See* [Dkt. 28-1 (Opp'n to Mot. Summ. J.) at 11.] On one occasion, Kunkel and Mather got into an argument while they were "off the clock" concerning Kunkel's children who played in front of his trailer.  [Dkt. 28-4 (Pl. Opp'n Ex. A, Kunkel Depo.) at 51:7-52:3.]   Neither Kunkel nor Mather were terminated.  On another occasion, Kunkel observed Mather swear at campers and reported it to management, but he was not terminated. [*Id.* at 53:13-55:2.]  (Kunkel could provide no other information regarding this incident.)  On a third occasion, Klemm testified that Mather and Kunkel got into an argument about an extension cord—Klemm spoke with Mather about sharing, but he did not speak with Kunkel. [Dkt. 28-5 at 27:4-11.]

The evidence presented does not support a finding that a similarly situated individual, Rich Mather, was treated differently.[3]  Two out of the three incidents involved Kunkel herself, and she was not disciplined.  As for the third incident in which Mather purportedly yelled at campers, the Court finds that this one instance does not raise an inference of discriminatory intent standing alone.  Kunkel did not testify when this incident occurred or whether it was Mather's first, second, third (and so on) verbal argument.  Kunkel herself was terminated after her third verbal argument, which also involved physical force.   Accordingly, Mather's one argument with campers cannot serve as the basis for establishing discriminatory intent.

Furthermore, the Court finds that other evidence in the record supports a finding that Strawberry Park did not act with "discriminatory intent" when it terminated Kunkel.  For example, the incident leading to Kunkel's termination involved an argument between Kunkel and two other women who were not terminated.[4]   [Dkt 27-3 at 79:1-82:19.]   As another example, Strawberry Park terminated a male employee for using physical force against a guest.  [Dkt. 28-2 ¶ 57.]   Contrary to Kunkel's contention, the evidence establishes that Strawberry

---

[3] Whether two employees are "similarly situated" is typically a fact-intensive question reserved for the jury defined, in relevant part, by whether the employees are subject to the same performance and discipline standards.  *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).  Defendant does not challenge Mather's status as a similarly situated employee.

[4] As part of Kunkel's "pretext evidence," she contends Cassandra and Euell (two women) were not terminated even though they were the "aggressors."  [Dkt. 28-1 at 14.]  While Kunkel argues this evidence supports her disability claim, the fact remains that it is evidence that two women were not terminated, cutting against her gender discrimination claim.  Accordingly, even if she somehow did establish a *prima facie* case, Kunkel would fail to satisfy her burden of persuasion at the pretext stage.  *See Reeves*, 530 U.S. at 143.

Park treated its male and female employees similarly.  Accordingly, for the Title VII and CFEPA gender discrimination claims, summary judgment is GRANTED in favor of Strawberry Park.

   B.  <u>Disability Discrimination</u>

   Unlike Title VII and the CFEPA (which contain identical "because of" language), the ADA and the CFEPA prohibit disability discrimination with different language.  That is, the ADA prohibits an employer from terminating an employee "on the basis of disability," 42 U.S.C. § 12112(a), whereas the CFEPA makes it unlawful to terminate an employee "because of" her disability, Conn. Gen. Stat. § 46a-60(b)(1).  Courts have determined the federal and state statutes employ different causation standards for proving intent: the more stringent "but-for" cause standard under the ADA versus the more easily satisfied "motivating factor" test under the CFEPA.  *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("We, therefore, join the conclusion reached by the Fourth, Sixth, and Seventh Circuits that the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."); *Wallace v. Caring Sols., LLC*, 213 Conn. App. 606, 626 (Conn. App. Ct. 2022) ("[W]e are persuaded that the motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under the CFEPA, regardless of the federal precedent established in *Gross* and its progeny.").

   As with Kunkel's gender discrimination claim, Strawberry Park only challenges the fourth element of her *prima facie* case: that she "suffered adverse

employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). The Court assesses Strawberry Park's intent with both the "but-for" and the "motivating factor" tests in mind.

The undisputed evidence is that neither decision-maker—Carl Landi nor Jeffrey Klemm—knew about Kunkel's PTSD or Depression. The Second Circuit has stated in a summary order that a plaintiff fails to establish a *prima facie* case under the ADA when she "[can]not adduce evidence that [her] supervisor had knowledge of [her] disability." *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130-31 (2d Cir. 2010). Several courts in this district have recently addressed this issue for both ADA and CFEPA claims and arrived at the same conclusion: an employee cannot prove the termination is <u>because of</u> the disability when the decision-maker <u>does not know</u> about the disability. *See, e.g., Alleva v. Crown Linen Serv., Inc.*, ("The employer's decision makers must have notice of the disability for the employer to be held liable under ADA; otherwise, discrimination cannot be 'because' of a disability.") (ADA and CFEPA); *Choleva v. New England Stair Co., Inc.*, No. 3:18-CV-756 (JBA), 2020 WL 3976969, at *5 (D. Conn. July 14, 2020) (stating that a plaintiff can satisfy the notice requirement by "demonstrate[ing] that the defendant was aware that the plaintiff was 'disabled' within the meaning of the ADA") (ADA only); *MacDuff v. Simon Mgmt. Assocs. II, LLC*, No. 3:20CV773 (RAR), 2022 WL 972426, at * (D. Conn. Mar. 31, 2022) (stating the decision-maker must be aware of the disability) (ADA and CFEPA).

The Court finds *MacDuff v. Simon Management Associates, II, LLC* instructive. The *MacDuff* plaintiff worked as the Operations Director for the Clinton

Crossing Premium Outlets but was put on progressive discipline and ultimately terminated for poor performance. *See MacDuff*, 2022 WL 972426, at *1-5. The undisputed evidence—which included the plaintiff's own admissions—established that neither of his two supervisors who suggested termination were aware of his ADD diagnosis. *See id.* at *6-7. Ultimately, the court found the plaintiff established his *prima facie* case, because the HR director was aware of the disability and accommodation request yet approved the termination. *See id.* at *8.

Here, Kunkel's evidence is nearly identical, with one notable difference. Like the *MacDuff* evidence, the undisputed evidence in this case establishes that the supervisors who made the decision to terminate Kunkel (Landi and Klemm) were unaware of her PTSD and Depression diagnoses. Unlike the *MacDuff* plaintiff— whose termination was approved by an HR employee who knew about the disability—none of Kunkel's decision-makers had the requisite knowledge. That is, the only supervisor who knew about Kunkel's diagnoses, Pedro, had nothing to do with her termination. Because Kunkel cannot show that the decision-makers had knowledge of her disabilities, she cannot establish a *prima facie* case of disability discrimination under either causation standard.

Even if Kunkel could establish a *prima facie* case, Strawberry Park has proffered a legitimate, non-discriminatory reason for her termination: she used physical force against her supervisor and then used physical force against herself.[5] Kunkel cannot show this reason is pretextual simply because her use of

---

[5] Kunkel' contends the stated reason for her termination is having "outbursts." While physical force can encompass "outbursts," it is ultimately the defendant that must state the reason for termination. *See McDonnell Douglas*, 411 U.S. at 802.

physical force was triggered by her PTSD.  The Second Circuit has explained it "does not read the ADA to require that employers countenance dangerous misconduct, even if that misconduct is the result of a disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 173 (2d Cir. 2006).  In arriving at this conclusion, the Second Circuit adopted reasoning from the EEOC's amicus brief, which is that "an employer may discipline or terminate an individual who, because of disability, makes a threat against other employees if the same discipline would be imposed on a non-disabled employee engaged in the same conduct." *Id.* at 171.  Strawberry Park terminated an employee with no known disability for using force against a guest. [Dkt. 28-2 ¶ 57.]  Because use of force was terminable conduct, Kunkel fails to establish pretext.[6]   Summary judgment is therefore GRANTED as to the disability discrimination claims.

>    **C. Failure to Accommodate Disability**

Kunkel argues that Strawberry Park failed to accommodate her need to avoid large crowds when she was tasked to work in the corn maze on September 27, 2019.[7]  A failure to accommodate claim under the CFEPA follows the same standard as that of the ADA.  *See Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008).

---

[6] The Court notes that Kunkel cannot show pretext simply by stating that she never received a copy of the handbook.  Indeed, she admits that she reviewed the written rules and regulations, and she knew she could be terminated for a legitimate reasons.  [Dkt. 28-2 ¶ 22-24.]

[7] While Kunkel testified that she was required to call bingo despite the large crowds, the opposition brief does not indicate these instances resulted in Strawberry Park's failure to accommodate Kunkel.  Accordingly, the Court only addresses the corn maze incident.

To establish a *prima facie* case, the employee must show: (1) she is "disabled" under the statute, (2) the covered employee had notice of the disability; (3) she could perform the "essential functions" of the job with an accommodation; and (4) employer refused to provide such an accommodation. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017).  Strawberry Park challenges the third and fourth elements.

As an initial matter, the Court must decide the relevant "essential functions" of Kunkel's job.  "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  Factors of a position's "essential functions" may include, in relevant part: (i) "the reason the position exists is to perform that function;" and (ii) "the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(i),(ii).  Evidence establishing whether a function is essential includes the employer's judgment, written job descriptions, the amount of time spent performing the task, and the work experience of past and present incumbents.  *See* 29 C.F.R. § 1630.2(n)(3).  Although considerable deference is given to the employer's determination of the essential functions, the question is ultimately a "fact-specific inquiry" that balances the employer's determination and the "how the job is actually performed in practice."  *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013).

Viewing the evidence in the light most favorable to Kunkel and construing reasonable inferences in her favor, the evidence nonetheless supports a finding that an essential function of Kunkel's job was to work with people, including in

small groups.  Kunkel testified that, during the hiring process, Pedro pitched the position as helping with bingo, designing medals and certificates, and helping to schedule employees and camper activities.  [Dkt. 27-3 at 37:2-38:23; Dkt. 28-2 ¶ 36] She performed all these tasks on a daily basis, and she also found employees on the campground as needed.  [Dkt. 27-3 at 43:8-14, 66:14-23.]  Kunkel never refused or said she was unable to perform these tasks.  [*Id.*]  Landi described her essential functions as a recreation staff member to be to "plan, schedule, organize and execute recreational activities for adults and children who camped at the campground…."  [Dkt. 27-2 ¶ 10.]  This included "nightly bingo, which was a popular event, well-attended by numerous campers at a time."  [*Id.* ¶ 10.]  His general description aligns with Kunkel's description of her daily tasks.

On September 27, 2019, Strawberry Park assigned Kunkel to work on the corn maze with three to four other employees, one of those being her younger sister.  [Dkt. 28-2 ¶ 45; Dkt. 27-2 at 83:4-9.]  Kunkel expressed a desire not to work in the corn maze due to the number of people, but Pedro required her to help.  [Dkt. 28-4 at 76:15-77:19.]  Kunkel admits that the number of people in the corn maze that day constitutes a "small group."  [Dkt. 28-2 ¶ 45.]

Based on the undisputed evidence, Kunkel fails to establish a *prima facie* case under two "request for accommodation" scenarios.  The first scenario is one in which Kunkel's request not to work in the corn maze is a new accommodation request not to work in a <u>small group</u>.  Were this to be the case, the Court finds that she would be incapable of performing the essential functions of her job, thereby failing the third element.  Indeed, it would be unreasonable for Strawberry Park to

give Kunkel carte blanche to refuse any task that required working with a few individuals, given her role as recreation staff was to facilitate recreational activities for campers. *See Greenbaum v. NYC Trans. Auth.*, No. 21-1777, 2022 WL 3347893, at *3 (2d Cir. 2022) ("[A] defendant employer is not required to accommodate an employee's disability if the proposed accommodation is unreasonable or would impose an undue hardship on the employer.") Kunkel understood that Strawberry Park did not permit her to work exclusively in the office. [*See* Dkt. 27-3 at 66:14-23.] She was aware she would have to work with others when she accepted the position. [*Id.* at 88:9-16.] The corn maze task enabled Kunkel to be outside working alongside her sister. Strawberry Park would be hard-pressed to find a satisfactory small-group task if this corn maze role could not suffice. Accordingly, under the first scenario Kunkel fails to establish the third element of the *prima facie* case.

The second scenario is one in which Kunkel contends the corn maze task violates her accommodation request to avoid "big crowds of people." Kunkel admits that the number of people in the corn maze that day constitutes a "small group." [Dkt. 28-2 ¶ 45.] Indeed, no reasonable jury would conclude three to four people is a "big crowd of people." *See Am. Home Assurance Co.*, 446 F.3d at 315–16 (evidence must <u>reasonably</u> support a jury verdict). Therefore, under this scenario Kunkel fails to establish the fourth element, because Strawberry Park did not refuse an accommodation request. Rather, Kunkel was a disgruntled employee who did not want to carry out her supervisor's assignment. The Court GRANTS summary judgment as to Kunkel's failure to accommodate claims.

17

**IV.     CONCLUSION**

For the above reasons, summary judgment is GRANTED in favor of Defendant Strawberry Park on all counts.  The Clerk is directed to close this case.

**IT IS SO ORDERED**

_____

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: November 2, 2022**